## Reed v. General Ins. Co. of America et al.

(Decided June 2, 1936.)

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and R. W. KEENON for appellant.

FINLEY F. GIBSON, Jr., and RALPH PIERCE for appellee General Ins. Co.

JOHN K. TODD for appellee intervening petitioner Geo. J. Miller.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal requires a review of sections 762a-14, 762a-18, 762a-19, 762b-25, 762b-29, and 762b-30, and the provisions of the form of a fire insurance policy with an indorsement thereon of the General Insurance Company of America, organized and existing under the laws of the state of Washington.

The questions to be determined in view of these sections, and the conditions, provisions, and terms contained in this policy and the indorsement on it, are: Is the plan of term insurance proposed by the company under it and the indorsement, "unfair discrimination?" and does it constitute rebating?

Section 762a-14 is an inhibition against rebating in part of a premium commission or the offering any valuable consideration as an inducement to take insurance. Section 762a-19 elaborates what shall constitute rebating and prohibits the same.

Section 762a-18 forbids an insurance company or its agent making any contract or agreement with reference to any insurance other than is plainly expressed in the policy.

A compliance with section 762b-25 is a condition precedent to the commencement and continuance of the business of a fire insurance company in this state; imposes upon every such company engaging in this business in this commonwealth, the ineludible obligation of becoming a member of, and maintaining, a rating bureau, and prohibits it from being a member of more than one rating bureau for the purpose of rating the same risk against the same hazard. It prescribes the membership of a rating bureau and how it shall be maintained.

Section 762b-29 prohibits unfair discrimination "between risks in the application of like charges and credits, or which discriminates unfairly between risks of essentially the same hazards, and having substantially the same degree of protection against fire"; and the use

of "any method of computing unearned premiums on policies to be cancelled covering farm property other than that used on other classes of property of like character located in cities and towns."

Section 762b-30 reads:

"Any deviation by any company or insurer from the schedule of rates established and maintained by the bureau which it maintains or of which it is a member, shall be uniform in its application to all of the risks in the class for which the variation is made, and no such deviation shall be made unless the same is uniform and unless notice thereof shall be filed with the bureau of which the insurer is a member and the auditor at least fifteen days before such variation is in effect, except as contained in the policy and the usual contract for other insurance, no insurance company or insurer or rating bureau shall make any contract or agreement with any person insured or to be insured that the whole or any part of the insurance shall be written by, or placed with any particular company, insurer, agent or group of companies, insurers or agents."

These provisions of the statutes vest in the companies the power to create and organize an actuarial bureau. It is, in reality, a creature of the insurance companies, subject to statutory regulations. It reigns, but does not govern. It is not lese majeste so to view it. Any one or more insurance companies are privileged to create and maintain its or their own actuarial bureau. The limitation is that an insurance company cannot be a member of more than one bureau.

The Kentucky Actuarial Bureau was so organized, and, in the exercise of its statutory authority, it has adopted rules, regulations, and rates as follows:

"All classes of risks [including buildings and their contents] except those listed below may be written for a term longer than one year at the following multiples of the annual rate:

"2 years: 1¾ times the annual rate
"3 years: 2½ times the annual rate
"4 years: 3¼ times the annual rate
"5 years: 4 times the annual rate.

"Or, in other words, the full annual rate for the first year plus 75% of the annual rate for each additional year or pro rata part thereof.

"When the amount insured under a policy written for a term longer than one year at reduced multiples of the annual rate is increased for the unexpired term by endorsement, the rate for such unexpired term must be determined as provided in the following rules, unless otherwise provided.

"a. When the unexpired term is One Year or Less, the rate must be the pro rata part of the full annual rate.

"b. When the unexpired term is Longer than One Year, the rate must be the full annual rate for the first twelve months of the unexpired term plus 75% of the annual rate for each additional year or pro rata part thereof.

"Note: The provisions of sub-item b. do not apply to rates for risks which cannot be written for a term longer than one year except at full multiples of the annual rate.

"The foregoing term rules do not apply to the following risks: policies for a longer term than one year must not be written on the following risks, except at a full prorata of the annual rate, unless otherwise provided."

The General Insurance Company, a corporation organized and existing under the laws of the state of Washington, it is conceded, has in the manner and form provided by the foregoing statutes accepted and adopted these rules, regulations, and rates, and proposes to engage in this state in the business of a general fire insurance company in accordance therewith. Its policy is identical with like policies of all other fire insurance companies, actually engaged in business in this state, save it has indorsed on it, an option which reads:

"Annual Payment Plan."

" 'In consideration of the premium, the stipulations, terms and conditions herein named, and the stipulations, terms and conditions in the policy to which this endorsement is attached, it is hereby stipulated and agreed that the insured shall have

the option to renew this policy annually for ———— successive years, the total term in no event to exceed five years, by the payment of the premium of ———— per annum, and the issuance of a properly countersigned Renewal Certificate.

" 'No insurance shall exist hereunder beyond the expiration date of this policy or last renewal certificate.

" 'Attached to and forming a part of Policy No. ————, issued by the ———— Insurance Company of America.

" '————————, Agent.' "

It is the insistence of the insurance commissioner that the operation of this option effects "unfair discrimination" and constitutes "rebating," as these terms are defined in the above sections of the statutes. To sustain this construction of the option, he argues:

"The proposed plan is merely an evasion of the statutory mandate as to rates; and is an effort, by an adroitly-worded endorsement, to do what the law prohibits. The only question involved is whether the plan is valid under the relevant Kentucky Statutes. * * * The plan here proposed is not a deviation from a schedule of rates, but is an effort to write certain selected risks at less than the legal rate."

It "attempts, by contract, to fix rates in the future in a way which would oust the jurisdiction of the state to enforce the rating law. Any agreement in futuro with reference to state-made rates is void as a matter of public policy." It "attempts to contract with the assured to give the company other insurance, in violation of the latter part of section 762b-30." It "involves discrimination, as prohibited by section 762a-29; and also constitutes a potential misrepresentation in violation of section 762a-14." "The result of the proposed plan will be to entirely eliminate 'term' insurance and to place all business on an annual basis, which would inevitably increase the expense and raise the rates, thus destroying the very benefit now enjoyed by the assured under genuine term insurance." He admits, however, that "an 'option' is valid"; but insists that it is not permissible under our rating law "to take the place of

a contract of insurance." He presents "a comparison of the proposed plan and the five year installment-note farm policies of" other fire insurance companies now in business in this state, and declares that the proposed plan "has no basis in fact or law." He predicates upon this comparison the declaration that "the premium is earned when the risk attaches, under all insurance policies; * * * and this is one of the actuarial factors entering into the calculation of term insurance and making the rate reductions thereunder possible." He announces that there is no intention on the part of the General Insurance Company "to serve the small policyholder under this plan, and the claim that he will benefit from it is not true as a practical matter."

These excerpts from the insurance commissioner's brief exemplify the whole of his argument upon which he urges a reversal. He favors us with a construction of the above and other sections of the statutes, in perfect accord with his construction of the policy of the General Insurance Company, with the option indorsed thereon. There is a difference between assertions and demonstrations. Other than by assertions, plausible ex facié, he fails completely to demonstrate that the policy with the indorsed option operates in any way, to any extent, as "unfair discrimination" or constitutes "rebating," or in any manner or to any extent impinges any section of our statutes on fire insurance.

The basis of his argument is, when its policy, including the option, is compared by a mind favorable to the two, three, four, and five-year installment-note form of policies of all other insurance companies, it is thus shown to be the incarnation of "unfair discrimination," "rebating," and the infringement of most of our statutes governing fire insurance companies.

The fundamental error of such views is the assumption that the installment-note form of policies is the acme of term insurance, and that any other plan embodies the essential elements of the terms "unfair discrimination," "rebating," and all other things inhibited by the statutes.

He omits to observe that neither the rules and regulations of the Kentucky Actuarial Bureau, nor any provision of any section of the statutes, either prohibits or requires the payment in advance, in cash or by install-

ment notes or otherwise, the premiums at the rates fixed by the rating bureau for term insurance. Neither requires the payment in cash of the premium for the first year of the term and those for the other years of the term for which the policy is issued, to be evidenced by installment notes, or that the same shall, or shall not, be evidenced by an option binding on the company to accept the first year premium in cash, and those thereafter payable according to the rates fixed by the bureau at the option of the insured. The rules and regulations of the bureau and the statutes are silent as to the method any insurance company may adopt respecting how the insured shall be obligated to pay the premiums for term insurance stipulated or provided for in its policy.

The intent and purpose of both the rules and regulations of the bureau and the statutes is to regulate, control, and govern insurance companies and not the insured or his obligation to the company. They leave him free and untrammeled to pay cash or execute installment notes for the whole or a part of the premium for a term policy, or if he can arrange so to do with the insurance company, exercise an option as to their payment. It is obvious that if an insured accepts a policy of the General Insurance Company, according to its terms and the provisions of the option indorsed thereon, and in the exercise of the option, he declines to pay the premiums as they mature annually after the payment of the first one during the term of insurance covered by his policy, if his property is otherwise insured in another company, he is burdened with again paying a 100 per cent. premium, and the same reason that motivates him to execute and deliver installment notes and pay the same as they mature will actuate him to exercise the option as provided by the one indorsed on the policy here under review. The insurance commissioner in his brief concedes this option is valid, and then endeavors to undermine and destroy his concession wth a specious argument, the logic of which is not discernible.

The insured under the option indorsed on the policy of the General Insurance Company is given the right to exercise it. Under the installment-note plan, the insurer exercises the privilege of terminating the policy by the process of suspension, if any installment note is not paid when due. If the right to exercise an option at the

expiration of the first year of the term policy consti-
tutes "unfair discrimination" or "rebating" under one
form of policy, for like reasons, the privilege of sus-
pending the policy constitutes "unfair discrimination"
and "rebating" under the other. If the act of the com-
pany operating under the installment-note form of term
insurance, declaring its policy is suspended at the ex-
piration of the first year of the term, in case the insured
fails to pay the due note for the second or any subse-
quent year's premium, does not constitute "unfair dis-
crimination," "rebating," or a violation of any other
provision of the statutes, then the failure of the insured
to exercise the option accorded him by the policy of the
General Insurance Company constitutes neither a dis-
crimination, rebating, nor a violation of the statutes.

It should be conceded that if the General Insurance
Company's plan of insurance required the payment in
cash in advance of the annual rates of the premiums
fixed by the actuarial bureau's rules and regulations for
either two, three, four, or five-year term, instead of giv-
ing to the insured a right to pay same in accordance
with the option indorsed on the policy, the varity of
argument now so strenuously made against its policy
and option could be made as consistently and as easily,
and with equal and like potency, against such cash plan
of term insurance. And if the policy with the option of
the General Insurance Company be accepted as the cri-
teria, as the insurance commissioner in his brief as-
sumes we must so regard the two, three, four and five-
year installment-note form of policies, all of his argu-
ment and criticism of the General Insurance Company's
policy may be as aptly and effectively urged against the
latter, as they are here presented against the General
Insurance Company's policy and option.

It is a matter of general knowledge that where the
insured purchases a policy for a term of two, three,
four, or five years, under the installment-note form
of policies, and elects to pay cash in advance or to ex-
ecute his installment notes for the premiums for a
portion, or the entire term of insurance, if his prop-
erty is destroyed by fire at any time after the com-
mencement of the term of the insurance, the company
retains the unearned cash premium or deducts the un-
paid installment notes from the face of the policy and
pays the policy to the insured accordingly. When this

view of the installment-note form of policies is contrasted with the optional right of the insured under the policy and option of the General Insurance Company, it might be plausibly said that the plan of the installment-note form of policies is for this reason discriminatory at least as to the insured. Concededly, such is not "unfair discrimination" or "rebating," as these terms are used in the statutes.

The discrimination which the statutes prohibit and prevent is "unfair" or "unjust" discrimination. The term "unfair discrimination" is accurately defined by the statutes. "Rebating," in insurance parlance, is likewise defined by the statutes. "Unfair discrimination" and "unjust discrimination" are synonymous. The words "unjust discrimination" in relation to passenger rates were defined by the Supreme Court of the United States in Interstate Commerce Commission v. Baltimore & Ohio R. Co., 145 U. S. 263, 281, 12 S. Ct. 844, 36 L. Ed. 699, to which the interested mind is referred. Its definition of the words "unjust discrimination," as therein defined, contains the essential elements of "unfair discrimination," as they are used in section 762b-29.

The General Insurance Company is proposing to execute, issue, and sell only one form of policy with the identical option indorsed on each of them, for the same term of insurance, for like charges and credits, without discrimination between risks of essentially the same hazards, affording all policyholders the same degree of protection; uniform in its operation as to all of them, and not containing any method of computing unearned premiums on policies to be canceled, covering farm policies, other than that used on other classes of property of like character located in cities or towns. Its policy with the indorsed option requiring the insured to pay 100 per cent. of the first year's premium and at his option the subsequent annual premiums, instead of executing his installment notes for the schedule rates of premiums established and maintained by the bureau, is, in no sense, a deviation from the bureau's rates, within the meaning of this term as it is used in section 762b-30, although it is a deviation from the plan of other insurance companies which allows the insurer the option to suspend the insurance in case of the insured's failure to pay an installment note and declare his policy lapsed

on account thereof; nor is its policy discriminatory under the statutes, because its option allows him to escape in case of destruction of his property by fire be-. fore the expiration of the term of insurance covered by his policy, the burden of having deducted from the sum of his policy, the unearned premiums for the remainder of the term.

In General Insurance Co. of America v. Bowen, Supt. of Insurance, 130 Ohio St. 82, 196 N. E. 774, the Merchants'. Fire Insurance Company in the state of Ohio issued policies for a term of five years with a provision therein allowing the insured the privilege of paying the premium yearly and terminating the policy in a year. At the same time it was issuing policies in that state for a five-year term that had the same rate for five years, but the premium for the full term was payable in advance and the contract was effective for the full term. The company in the present case was issuing in Ohio similar policies, but somewhat differently worded. Some time prior to April 16, 1935, there were "special deviation filings" covering such long term contracts. On that date the superintendent of insurance entered "an order finding that such filings 'result in a different annual rate in the same risk or similar risks in the same class' ''; and was a deviation contrary to section 9592-1 et seq. of the General Code of Ohio, and that section 9592-9, General Code, required the deviation to be uniform in its application to all of the risks in the class for which the deviation was made, and declared such filings were void. On an appeal to the Supreme Court, the findings of the superintendent of insurance were affirmed. In that case each company was selling two policies differing, as above indicated.

The opinion of the court does not contain the "special deviation filings," upon which the ruling of the superintendent of insurance was based. Inasmuch as the opinion discloses that both the Merchants' Fire Insurance Company and the General Insurance Company were executing, issuing, and so selling policies in the state of Ohio, in the absence of the "special deviation filings," the presumption is that the findings manifested the purpose of the companies, each, to continue to issue and sell the same policy, conforming with the plan of selling insurance already in use. Such is not the case

here. Therefore, the ruling of the Supreme Court of Ohio is inapplicable in the present case.

The General Insurance Company's policy and option are uniform in their operation in the fullest sense of the term as to all policyholders within the meaning of this term as it is used in the statutes.

As a part of the record before us is the argument of the insurance commissioner's counsel before the trial court, in which he stated that the plan of the General Insurance Company did not constitute rebating, within the meaning of this term, as it is used in the statutes. We, therefore, do not deem it our duty to consume either time or space to demonstrate the correctness of his concession before the trial court. It is sufficient to say that the mere reading of the statutes defining and prohibiting rebating and the General Insurance Company's policy with the option indorsed thereon is sufficient to substantiate the statement that the plan of insurance therein proposed is not rebating.

The insurance commissioner conceives and accordingly asserts in his original and reply brief that the policy and the indorsed option of the General Insurance Company is "against public policy"; the payment of the premium thereunder prevents its "retention," which is "one of the essential actuarial factors"; "it is a plan to write certain selected risks at less rate than legal"; "the plan is merely a succession of five annual contracts"; "it constitutes potential misrepresentation"; "the courts cannot enforce the option"; it is within our "retaliatory law"; and "the situation here is similar to the similar situation under the railroad and utility rate-regulatory laws."

Such pronouncements are not illustrative and furnish no aid to a fair or fundamentally sound conclusion.

He also argues that the plan of insurance of the General Insurance Company will interrupt comity inter all fire insurance companies. This evil, if it be one, can be cured only by legislative enactment, and not by an illogical construction or an unauthorized application of existing statutes. And this thought with propriety may be expressed as to most, if not to the entire catalogue of his affirmations.

We have diligently examined and earnestly con-

sidered each of the points presented by the parties in the light of their briefs in connection with the statutes. It should be conceded that it is impractical for us to attempt in this opinion to review and state in detail our view on each and every question presented in briefs, or to state in respect of them any more than our general conclusions.

It is plain to our minds that the grounds of assailment of the policy and option of the General Insurance Company are without merit and fundamentally erroneous, and they neither singly nor collectively authorize or justify the ruling of the insurance commissioner, and the trial court correctly so decreed.

The judgment is affirmed.

The whole court sitting.